Thank you very much. My name is Barclay Johnson. I'm an assistant federal public defender with the District of Vermont and I'm pleased to be here on behalf of Varian Lefebvre. This court would have to overturn some 45 years of Supreme Court and circuit precedent to conclude that the District Court had not erred. The Supreme Court's decision in Dunaway establishes the clear rule that when a suspect is seized from his home or other place he or she's allowed to be and then transported to a police station for investigation, that is a de facto arrest that must be supported by a probable cause. I'm sorry, so can I just ask for you to articulate because one of the things that will happen is we will hear this argument and this will turn into something that goes on a seizure was either a Terry stop or an arrest. What are the words that a court needs to write down to make sure that future litigants and future courts know when the line is crossed? I think it's, you could phrase it a couple ways. One is to say, look, in McCargo we approved the use of the gun, the handcuffs, those are not relevant to the inquiry. You would think that standing away from a police station is a de facto arrest. I think that's probably the clearest way given McCargo because it's, certain courts have approved a short transport. Okay, so that means that the use of the gun, the handcuffs, those are not relevant to the inquiry. You would think that standing alone is the transport. I think so. Once you have a Terry stop, and again, to say it a little differently, it's a Terry stop, full stop. It's not a Terry stop and transport. The gun, the other conduct that occurs right as he sees is relevant but not to this question precisely. In McCargo, was the defendant taken from his home? No. I thought you said earlier that when a person is taken from their residence and transported, that's significant. I don't, the specific language from the Supreme Court is taken from their home or other place he or she is entitled to be. McCargo was just on the street. Mr. Lefebvre was just in the parking lot. He was, both of them were entitled to be there. It's distinct, I think, from being found, you know, in a closed store that you're burgling. I think that's the only distinction. The government, contrary to what the government claims, it's not just the home. The Supreme Court makes it clear that it's being taken from the home or other place you're entitled to be. And you refer to a short distance, but here, it's just from the north side of Rutland to the south side. The south side of Rutland to the north side of Rutland. I don't want to be funny, but how far can that be? Miles, Your Honor. Nobody's ever approved miles. So, as we point out, in McCargo, it's a couple hundred feet. The other cases relied upon by the district court, it's, again, hundreds of feet block. We're well beyond that. We're literally the south side, south edge of Rutland to the barracks on the north side. It's miles. So, can you square your position that the transport alone would be sufficient to constitute an arrest with FISCU, which asks us to use a least intrusive means test? How would you harmonize those cases? I think one of the issues is there's distinct inquiries and issues. So, on the one hand, we have a question of how long can a Terry stop continue? And we think this ceases to be a Terry stop once they start going to the state police barracks. And so, that's distinct from the question of you've detained somebody and then you proceed to move them to the police station, state police barracks for investigation. And that's an arrest. I mean, what the Supreme Court is saying in Dunaway is, look, Terry is a class of cases, class of situations where the impact, the invasion on the Fourth Amendment rights is de minimis. It lasts a short period of time and it doesn't involve moving. What we have in Dunaway, what we have here, is somebody who's been seized, you know, here at that gunpoint, and moved. And that's, you can say we're not arresting you. Counsel, to what extent does, these situations are fluid, right? It's not, you're looking at what's happening as time goes. To what extent does the defendant's conduct or the law enforcement's observations and other things that are happening lend or add to the reasonable articulable suspicion to extend the period? So, there are cases that talk about, you know, it's not, we're looking at a snapshot of just this when he's initially seized. But what leads to the transportation, there are other developments. And isn't the reasonableness and the length of the stop, in part measured by the person, the individual that's been seized's conduct, statements they're made, in this case, your client made certain statements, acted in a certain way that would add to the reasonable articulable suspicion? No? Well, one, the government's clarified that it agrees that Mr. Lefebvre did not say, bring me to the witnesses, but in fact said, bring them to me. Two, again, we think it's clear that... I'm not talking about his statement, hey, if I did this, bring the witnesses, let them identify me. Which he did say. I'm talking about, hey, you can't look at my bag, you can't... Statements that he made that would suggest to law enforcement that their hunch or their reasonable articulable suspicion that he matches the description of the individual who pointed a gun at someone is, in fact, this person. So, we're not looking at it in isolation in terms of the reasonableness. That's what I'm trying to get at. Right. And all those things go towards, and we would say it's not, the issue is not whether there's reasonable suspicion, but whether there's probable cause, because that's what is involved once you, even if you say we're not arresting you, we're just detaining you, once you've put somebody in handcuffs, put them in the cruiser, driven them across town... No question they're seized. The question is the reasonableness of that seizure and that detention and the length of that detention. Well, no, I think here it's got to be, was there a probable cause? Because this is a de facto arrest under Dunaway, under McCargo. Reasonable suspicion stops being an issue once they leave the parking lot and the cruiser headed for the state police barracks. Did the district court make a ruling on whether there was probable cause that arose at any point in this series of events? It did, but only at the very end, once the witness had identified Mr. Lefebvre. So, you know, well after he's at the barracks and, you know, is put in view of witnesses. So that's well after the point at which... Would there not be a good basis for a cop to think that there was probable cause based on unusual tattoos, unusual because they're on the face, the FBI tip, the nosy neighbor, the gray sweatshirt, the backpack, and where he was? I understand the tattoo is something that weighs in favor of probable cause, but again, it's a totality of the circumstances inquiry. So there's still the passage of time, the thoroughness of the search of the hotel, the variance from the FBI description and the witnesses description, and the fact that they frisked him and didn't find a gun. Well, the gun was in the backpack, which, by the way, would be a very good reason for shrewd police to handcuff him since even if they didn't see a gun in his clothing, there was a gun in his backpack, which you can reach if you're not handcuffed. Again, the police had that in their possession, and in our view... Did they get a warrant to search the backpack? Eventually, but from our point of view, the question is whether the district court erred when it analyzed the situation solely as a continuation of a Terry stop. We think there's a clear line in this court's cases and the Supreme Court case of saying, once you move that suspect more than a short distance, that's a de facto arrest and you need probable cause. So I think I understand your position, and tell me if I've got something wrong, that the district court made a conclusion it did about as to probable cause pretty late in the game. Would you argue that there was no probable cause just by the description? That Trooper Sullivan saw a man, matched the description, leaving the stairwell where the alleged assault occurred. Would that have been enough? For probable cause? We think not. And we're not arguing... Well, can you tell me what else you think would be needed? And go ahead and tell me what you're not arguing. We're not saying there wasn't reasonable suspicion in the initial encounter. What we're saying is that any reasonable suspicion that existed dissipated based on the amount of time that had passed, the troopers' thorough search of the building, the descriptions that didn't entirely match, and the search of Mr. Lefebvre. So to put a fine point on it, to make sure I understand your position, you are saying that it would have been error and they would have not had probable cause from the jump, instead of doing the terrorist off, they had arrested him based on the victim's description and the fact that he was leaving the stairwell. Yeah, we believe there's not probable cause for the same reason. Well, no, there's more than just two reasons. The amount of time that's passed... No, no, no, I'm sorry. I just want to make sure that I both understand your argument and that you understand the question that I'm asking. And I think we're close, so if you'll just bear with me a little bit. I understand that you believe that there may have been reasonable suspicion for a terrorist off, but at some point the terrorist off became an arrest. My question is, if instead of a terrorist off, if they had just arrested him, would there have been enough probable cause based on Trooper Sullivan knowing his description and seeing him leave? If they had skipped the whole terrorist off and extension of terrorist off business, but straight up arrested him, based on that, would there have been enough probable cause? And if not, what's missing? No, I think there wouldn't. Trooper Sullivan didn't see anybody leave. He just saw Mr. Lefebvre in the parking lot. I think that gets us to the same line of cases where just being in the same location as a crime is not enough. I thought he saw him leave the hallway where he rented the room where this occurred. No. Am I... I thought the same thing. So we need to check that for the record. Can you tell me the site that you have for that point that he did, that the first time he saw him was in the parking lot? That'll just help us. Because both Judge Kahn and I have the same recollection. I don't have it right with me. I just have one. A couple times you referred to the amount of time that elapsed. How much time elapsed after the report of the incident with the two women in the hotel and the time that he was stopped? It's approximately 50 minutes. Fifteen? Fifty. Five zero. Fifty minutes? Yes. Okay, thank you. Well, we will see you for three minutes on rebuttal, and if you don't mind coming up with that record set, because that will help with Judge Kahn. Okay, and Mr. Grisham. Mr. Johnson, I'm sorry. Thank you. Good morning. May it please the Court. Andrew Gilman on behalf of the United States. Your Honors, this Court shall affirm the District Court's decision denying the defendant's motion to suppress because the actions of the Vermont State Police in detaining the defendant, who matched the description of an armed suspect at the Holiday Inn in Rutland, Vermont, were supported by reasonable suspicion and probable cause, and in any event, are shielded by the good faith exception to the exclusionary rule. Okay, so can I ask, I'm going to start with the same question I asked him. What is the government asking us to hold as to when a terrorist stops becoming a terrorist officer and starts becoming an arrest? Well, Your Honor, the government is only asking this Court to rely on its prior precedence. So why don't you explain to me what you think that is? We have to write words. We actually have to put something on a piece of paper. So why don't you help me with that? Yes, Your Honor. That was a smart attempt at a cop-out, but I'm not going to give it to you. Yes, Your Honor. I appreciate the question. So as I understood the defendant conceding, they don't see the use of drawing a firearm or handcuffs as particularly relevant to whether the stop here morphed into a de facto arrest. Really, for the defendant, the question is whether the transportation increased the detention from a reasonable suspicion terrorist stop to a de facto arrest. This case fits squarely within this Court's decision in McCargo, which upheld the brief transportation of a suspect in the field for the... Is this a brief transportation? Because it's from one end of town to the other end of town, and as your adversary is pointing out, I mean, I'm not familiar with the geography of Rutland, but if it takes 9 or 10 minutes, it's not a short distance. Your Honor, respectfully, this was a short distance, and it was a reasonable amount of time. It was just a... The record below shows that the detention, the investigatory detention, lasted approximately 20 minutes from seizure to the identification of the defendant. Okay, so I want to get back to the question. And the question, so from what I... Am I correct in inferring that you believe that the standard is it becomes an arrest when someone has to travel for some amount that is 20 minutes or less? Is that what your standard is? No, Your Honor, that's not the standard. This Court has approved investigative detentions far longer than 20 minutes. In Tehrani, for example, there's an approximate 30-minute detention this Court approved. Bryce is another example of approximate 33-minute detention. It's really a... It's a fact-specific inquiry that looks at all the restraints on the defendant's liberty. Okay, so you don't think it's one, it's a multiple fact. So tell me about the gun. Is that a fact that leans toward it becoming an arrest or less like an arrest? The use of a firearm is certainly leaning towards... More an arrest, okay. What about the handcuffs? The handcuffs as well, but this Court's... Okay, and then the transportation, if it is not incidental? Well, I wouldn't phrase it as incidental. The question is, under Terry, whether it was reasonably related in scope to the circumstances which justified the interference in the first place. In here, there are three Vermont State troopers, the only troopers on duty at the time from the Rutland Barracks. In light of what you said, does it... ...that the nine-minute trip was not taken to the jail, but was taken to witnesses who could cooperate or dissipate the suspicion that arose? That's exactly correct, Your Honor. The fact that the witnesses happened to be at the police station, they were told to go there for their safety, so they were safe from the unsuspect... If they were the Burger King, then they would go to the Burger King. Exactly. The fact that it was a police station is merely incidental to this fact pattern, where the officers, the state police, were trying to quickly move to confirm or dispel their suspicion that the defendant was, in fact, the armed suspect at the Holiday Inn. So, look, what I understand you to be arguing is there's no set, fine rule. It depends on the circumstances and the facts of each case. Here, we're dealing with rural Vermont or, well, city of Vermont, but only three state troopers, and the witnesses were told to go somewhere safely. And the only way to ID them, to conduct this identification, was to put the defendant in the cruiser and travel to the police station because there were no police at the police station, right? No troopers were there. The building was locked. That's exactly correct, Your Honor. That's apparent in the body camera video from Sgt. Cushing in the Jordan-Pennington 48. And as this Court knows, a few blocks in New York, I know too, could take 10 minutes easily, right? But in rural Vermont, we have a short transportation. It is from one side of the town to the other, but the record shows that it was only 10 minutes, and within the scope of a 20-minute detention that was reasonably related to the officers' efforts to quickly confirm or dispel their suspicion that this, in fact, was the man who threatened the two witnesses with a firearm. Is it the government's position? No, please. Is it the government's position that reasonable suspicion ripened into probable cause? And if so, what's the earliest point that the government argues that could have happened here? Yes, Your Honor. It is the government's position that the reasonable suspicion did ripen into probable cause. The government's position specifically is that there was probable cause to arrest the defendant at the Holiday Inn in Rutland when, first of all, there's really two primary factors. First, the defendant matching the description of the suspect, facial tattoos, jeans, backpack, hoodie, and the approximate time and place of the offense is a strong indication that probable cause was established. In addition, when the defendant saw the police officer, he acted furtively and evasively, increasing the suspicion of the police officer. As he looked at his phone and turned away from the police officer, taken together under the totality of circumstances. So you don't think the location, you think the furtive response to the police is material? Well, both are material, Your Honor. So you think that there are three factors, not two? That's correct, Your Honor. It really is a totality of circumstances test. So there are many factors at play here. I was just trying to emphasize two in particular. But the court is correct that really there, on the circumstances there, there was probable cause at that point to arrest him. Did the judge make any observation as to how common or uncommon it is for people to have facial tattoos in this area? I mean, you said it's a rural area. I mean, in New York, it's very unusual for people to have facial tattoos. I never leave Manhattan. It's extremely, it was extremely rare, the existence of facial tattoos. Is there a finding? And the district court did make such a finding, which should be only subject to clearly erroneous review. That's at Joint Appendix 190. The district court found that Trooper Sullivan credibly testified that facial tattoos were unusual in his experience. And the record shows that Trooper Sullivan testified that this was only the third individual in his four and a half years with Vermont State Police who had a facial tattoo. So this is a unique identifying factor in the location where we are. That would seem to me to be, without that, it gets very dicey because you've got 50 minutes. You agree that it's 50 minutes between the event and the stop. And wearing gray clothing and having a backpack. I mean, everybody has a backpack. It would look like everything hinges on the facial tattoo and where the person is relative to the staircase in which the event took place. Your Honor, it's the fact that all of, not any one single of those factors, but all of them taken together conclusively establish public cause. If it were just a backpack or jeans or just the facial tattoos. But here, it's all those things together which establishes that there was public cause in conjunction with the defendant's reaction to the police. And on top of that, as Judge Kahn noted, the defendant's belligerence and protestation when he was arrested. That also complicated the picture for the police. I mean, if you arrest somebody who hasn't done anything, you're likely to be pretty upset about it. I'm not sure that cuts strong in one way or the other. That's true, Your Honor. The defendant, the challenge of the defendant's behavior, I think, underscores the, why the officer's actions in transporting the defendant while he was restrained was reasonable because he was so belligerent. And they had to deal with that challenge in trying to quickly confirm or dispel whether this defendant was the armed suspect in trying to see if the victims could identify him. I was focusing on the statement that he made when he said to the officers, you can't look in my backpack. You're not allowed to look in my backpack. I see. I'm not consenting to that, correct? That's correct. And they were looking, presumably, to see if he had a gun. Now, in the warrant itself, which is something they obtained later to search the backpack, they actually included pictures of the defendant taken at the scene, correct? That's correct, Your Honor. And at least the warrant affidavit says that he was observed, the officer who swore to it, observed him exiting the north stairwell at the ground level door where this took place, correct? And that was right in the affidavit? I believe that's correct, Your Honor. And to the court's question earlier, the district court, it's Jordan Appendix 190, I believe, where the district court specifically found and said, the man outside the hotel's north stairwell exit. And so, you know, it's clear from the affidavit and from the district court's decision that the defendant is at that stairwell. And that is probative. I was looking at Joint Appendix 036 and 139 of the record, which is the first page of the affidavit to search warrant. And I think from those facts taken together, the location of the defendant in that he was next to the stairwell where this crime occurred was a strong indicator that this defendant was, in fact, the individual who was the armed individual who threatened the hotel victims. And for these reasons, Your Honor, We're not done with you. I'm sorry, I'm not yours. I've got a couple of questions. Sure. But I want to make sure you answer them and you're satisfied. Okay. Would you agree that the district court didn't rule on the question of the good faith exception? That's correct, Your Honor. The district court did not rule on that, but the government submits that this, the record and the party's arguments are sufficiently developed for this court, if it wishes to reach that point, to rule. And this court can affirm on any basis in the record, of course. Why wouldn't we remand him? Well, to save judicial efficiency, Your Honor, there's no need for that additional process. It's clear from the record that the officers acted objectively, reasonably. They had, under McCargo, they were reasonable in believing that a brief transportation But if that is so, you don't need a good faith exception, do you? If it squarely fits under McCargo, well, I believe it factors into the good faith exception, but certainly if this court finds that McCargo applies, this court doesn't need to reach that question. And then the last question I will have, if my colleagues are done, is, is there any relevance to the FBI tip? The alleged drug dealer in the tip certainly seemed pretty vague. It does seem vague, Your Honor. I think the court was correct to note it as a small factor in the analysis. The government doesn't view that as a significant factor as to the reasonable suspicion of probable cause analysis here. In addition, Dunaway is, in that line of cases, is entirely distinguishable because their defense was removing the suspect from a private dwelling. And here we have a brief detention in the field, which is a much different circumstance. I have one more question. If instead of putting him in the cruiser and going to the barracks where the witnesses were waiting, if the police, if the state troopers could have driven to the barracks and driven the witnesses back and just held the defendant there in front of the hotel, that would have taken longer, correct? Exactly, Your Honor. So he would have been seized longer than to transport him for that identification. That's correct. And that's one of the bases why it's the government's position that these officers moved as swiftly as they could to confirm or dispel their suspicion. And the decision of the district court should be affirmed. If there are no further questions, the government will rest on its briefs. Thank you. Thank you. A couple points. One is, yes, it's in the officer's affidavit that he says, exiting the stairwell, but on page 190, and the affidavit, that part of it anyway, is reproduced in the district court's opinion. On 190, the district court says, near the stairwell. I don't think that location is determinative because it tends to cut both ways. The officers, of course, had been through that stairwell several times as part of their searching and didn't locate Mr. Lefebvre there or nearby. Reasonableness isn't part of the probable cause analysis. We're only considering reasonableness if we're considering the extension of a Terry stop. And again, this ceases to be a Terry stop as soon as they transport him. Well, let me ask you this. What if they had said, well, you know what, we're going to wait here. And instead, we're going to send a trooper to the barracks 10 minutes, 10 minutes back, to bring the witnesses. That would have been longer, correct? It would have been longer. But that would have been okay, to hold them there at the Holiday Inn longer than the 10 minutes it took to drive them to the barracks. Probably we would argue it wouldn't be. But that would be the extension of a Terry stop, which we would analyze under the reasonableness standard. And we would consider, for example... But you still would not, okay, right. So I think what you're saying is that it would not be an arrest. It would then be a question as to whether or not it was the extension of the stay. But you wouldn't come in and argue that by keeping him there, they had arrested him. They would just have improperly extended the Terry stop. Yes, we would be considering whether, for example, they should have used their phones to show the suspects, the witnesses, the suspect. We would be considering whether the length of time was reasonable, whether the officers' actions were reasonable. We don't, that's not the issue here. The issue is, was there a probable cause when they transported him? Because that's a de facto arrest under Dunaway and McCargo. Do you have any reactions to the good faith exceptions or anything you would opine on it? I think the bigger question is, the district court never ruled on these issues. And the district court should be the one to do that in the first instance. And the court should reverse and remand it so that those analyses can happen. And if there are no other questions? Isn't the good faith exception implicit in a ruling that there was justification for the stop, the detention at every stage? No, because it's a different issue. It is. First, we have to figure out, first the district court would have to consider whether there is probable cause. If the court found there was probable cause, then we wouldn't be dealing with the good faith exception. If there isn't probable cause, as we say, and for all the reasons we say, then we would get to the good faith exception, and it's the government's burden to prove that. I'm just asking, if a court erroneously says that there was probable cause, erroneously says that, isn't there implicit in that the idea that the cops were acting in good faith? I don't think so. I think it's a distinct issue. Here, it's quite clear that you need probable cause to seize the person and move them to the police station. It seems like it's a distinct issue if it's found that there was no reasonable suspicion or there was no probable cause, but in the absence of that, you invoke the good faith exception. If a judge doesn't do that, then it seems to me a remand would be useful, but if a judge finds that what was done was reasonable, then it would seem that implicit in that is the idea that the cops were acting in good faith. The court says reasonableness when it's analyzing it, but as a terrorist stop, it's a different standard if the court has to consider, well, was there a probable cause? And then, if there wasn't, then the court would have to consider the good faith exception. Thank you. Okay. Thank you. This was very helpfully argued. We appreciate this, and we'll take it under review.